In the Matter of the Petition of the RECTOR, Etc., OF ST. MARK'S CHURCH to Vacate, Modify or Reduce an Assessment, etc.

*Local assessment in New York — § 7 of chap. 326 of 1840 — Chap 302 of 1859.*

Section 7 of chapter 326 of 1840, directing that in no case shall an assessment for any improvement imposed upon a house or lot exceed "one-half the value of such land, as valued by the assessors of the ward in which the same shall be situated," as amended by chapter 302 of 1859, does not require that such valuation should be made for the purposes of general taxation, and it is sufficient if such valuation be made for the express purpose of furnishing a basis by which the limit of an amount for improvements may be determined.

Appeal from an order of the Special Term vacating an assessment. The petition in this matter states that the petitioners are the owners of certain real estate in New York city used for purposes of public worship; that an assessment for building receiving basins, etc., has been laid thereon; that said assessment is

more than one-half the value of said lot as valued by the assessors and commissioners of taxes, and has been imposed contrary to the provisions of section 7, chapter 326 of the Laws of 1840.

*Hugh L. Cole*, for the city of New York, appellant.

*Nathaniel A. Prentice*, for the petitioner, respondent.

DAVIS, P. J.:

The property of the petitioner was not exempt by law from assessment for local improvements. On the contrary, it was chargeable therewith like all other property benefited in proportion to the benefits received. The petitioner seeks, however, to escape all assessment under the provisions of section 7 of chapter 326 of the Laws of 1840, which reads as follows:

"§ 7. Commissioners or assessors for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved or unimproved lands, shall in no case assess any house, lot, improved or unimproved lands, more than one-half the value of such land, as valued by the assessors of the ward in which the same shall be situate." (Chap. 326, Laws of 1840.)

In this case the assessment imposed was $151.95, while the value of the property is about $150,000. It is very clear that the assessment does not exceed one-half the value of petitioner's property. But it is claimed that there having been no valuation for the purposes of general taxation by the assessors of the ward, it cannot be made to appear that the assessment imposed is not more than one-half the value of such lots. This argument rests altogether upon an interpolation sought to be made in the section above cited of the act of 1840. The petitioner asks to have the subdivision of the section construed as though it read "shall in no case assess any house, etc., more than one-half the value of such house, etc., as valued by the assessors of the ward in which the same shall be situate *for the purposes of general taxation.*" But the words in italics are no part of the section; and there is, we think, no reason whatever why, under this section, valuation of exempted property by the assessors of the ward may not lawfully be made for the purpose of assessment for

local improvements. It is very clear that the legislature did not intend by the act of 1840 to exempt any property from all liability for assessments for local purposes, but merely to impose a limitation beyond which no assessment should go, and when the section has accomplished that purpose it has done all that was intended. By sections 2 and 3 of chapter 302 of the Laws of 1859, ward assessors were abolished, and the board of commissioners of taxes and assessments created by that act were directed to appoint deputy tax commissioners " who shall perform, under their direction and supervision, the duties heretofore performed by the assessors of the several wards of said city, or such other duties as they shall prescribe." The seventh section of the act declares it to be the duty of the deputy tax commissioners, under the direction of the commissioners of taxes and assessments, to assess all the taxable property in the several districts that may be assigned to them for that purpose by such commissioners. It was not designed by this section to make these deputy tax commissioners sole judges of what real estate in their districts is or is not exempt from taxation, and they may, as it seems to us, under the power conferred, proceed to value all real estate in their respective districts, and give such other information in relation thereto as would tend to show its exemption, or they may mark the same as exempt as a reason for not assessing it. The act, in section 3, expressly declares that they shall perform, under the direction and supervision of the commissioners, the duties heretofore performed by the ward assessors, *or such other duties as the commissioners shall prescribe*," and so, under section 7, they are to report in addition to the particulars mentioned, such other information as the commissioners may from time to time require. We see no reason why, under these very general powers possessed by the commissioners, the deputies may not be required to make valuations of any or all the exempt property of the city for the express purpose of furnishing a basis for assessments for local improvements.

Coupling the authority given by the act of 1859 with the implied authority contained in the seventh section of the act of 1840, we think there is no difficulty in so construing the sections as to uphold valuations made of such exempt property for the purpose of local improvements.

It was suggested by CHURCH, C. J., in *The Matter of St. Joseph's*

*Asylum*, lately decided, that the ward assessors or their successors might have power under the act of 1840 to assess the value of exempt property for the purpose of assessment for local improvements, and we are satisfied that that suggestion is well founded. It was shown in this case that the deputy tax commissioner, having the district where the property is situate in charge, had valued or assessed the same under the express direction of the board of commissioners of taxes and assessments, and that that value is the basis for the assessment made in this case. It shows that the assessment imposed does not exceed one-half of the value of the land as valued by the deputy tax commissioner, and is, therefore, not obnoxious to the provisions contained in the act of 1840.

It is insisted, however, that that assessment was not properly made in point of form, because it was not under a special oath, although, of course, under the general oath of the deputy tax commissioners, and was not subscribed by him.

It is enough, in answer to this suggestion, to say that these were formal matters, which could be the subject of review on *certiorari*, but do not invalidate the assessment when attacked collaterally. We think the order was erroneous and should be reversed, and the proceedings remitted for further hearing, with ten dollars costs besides disbursements.

BRADY, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Order reversed and proceedings remitted, with ten dollars costs and disbursements.